IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| Connie R. Hundley, <br> Individually and on behalf of <br> all others similarly situated <br><br> Plaintiffs, <br><br> AirMedCare Network; <br> Med-Trans Corporation; and <br> Matthew Ellis <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No. __2:16-cv-12428__ <br> ) Removed from Mingo County <br> ) Circuit Court, Case No. 16-C-134 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## NOTICE OF REMOVAL

Defendants Med-Trans Corporation ("Med-Trans"), AirMedCare Network ("AirMedCare")[1] and Matthew Ellis ("Ellis," and collectively with Med-Trans and AirMedCare, "Defendants"), remove this matter from the Circuit Court of Mingo County, State of West Virginia, to the United States District Court for the Southern District of West Virginia pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

As set forth below, this matter is properly removed because Defendants have complied with the statutory requirements for removal under 28 U.S.C. §§ 1441 and 1446, and this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d), the codification of the Class Action Fairness Act ("CAFA").

---

[1] AirMedCare is not a distinct legal entity. It is a d/b/a used by Air Evac EMS, Inc. *See* Declaration of Brandi Jordan, attached as Exhibit 3, at ¶ 1. Plaintiff has not asserted any claim against Air Evac EMS, Inc. However, out of an abundance of caution, Air Evac EMS, Inc. joins in this Notice of Removal and specifically reserves all rights and defenses available to it.

## BACKGROUND

1.  Plaintiff filed the action styled *Hundley, Individually and on behalf of all others similarly situated v. AirMedCare Network, Med-Trans Corporation, and Matthew Lewis,* Case No. 16-C-134, in the West Virginia Circuit Court of Mingo County (the "State Court Action") on July 25, 2016.[2] Plaintiff seeks money damages, injunctive relief, and attorneys' fees because she claims that Defendants AirMedCare and Ellis allegedly misrepresented the nature of AirMedCare's air ambulance "membership" agreement, and that Med-Trans allegedly breached its contract with Plaintiff by requiring Plaintiff to release funds received from third parties for the payment of Med-Trans' air ambulance service fees. State Court Action ¶¶ 12-15, 22 p. 10. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the State Court docket sheet is attached as Exhibit 1 and true and correct copies of all papers served in the State Court Action are attached as Exhibit 2.

2.  For each of her claims, Plaintiff seeks certification of a class defined as "those persons who are citizens of the State of West Virginia as of the date of this action is filed and who have purchased or renewed memberships with AirMedCare Network." State Court Action ¶ 26.

3.  On November 23, 2016, Plaintiff served Med-Trans and AirMedCare with the State Court Action. This Notice of Removal is timely because it is being filed within 30 days of that service. 28 U.S.C. § 1446(b); *Lovern v. Gen. Motors Corp.*, 121 F.3d

---

[2] Plaintiff did not serve Med-Trans or AirMedCare Network until November 23, 2016.

160, 161 (4th Cir. 1997) (holding that "notice must be filed within 30 days after service on the defendant of initial process").

4. Removal to the Southern District of West Virginia is proper because this District includes Mingo County, West Virginia. *See* 28 U.S.C. § 129(b).

5. Pursuant to 28 U.S.C. § 1446(d), Defendants will give Plaintiff written notice of the filing of this Notice of Removal and will file a copy of the Notice of Removal with the Clerk of the Circuit Court of Mingo County, West Virginia.

## REMOVAL BASED ON THE CLASS ACTION FAIRNESS ACT

6. CAFA confers jurisdiction upon federal district courts over class actions in which: (1) there are at least 100 proposed plaintiff class members; (2) any plaintiff class member is diverse in citizenship from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d).

7. As a threshold matter, this matter is a proposed "class action" as defined by CAFA because it is a case brought by Plaintiff, who is seeking to represent a "class" of persons, which, as defined by Plaintiff, will have "numerous…persons" and was filed in state court pursuant to a statute or rule authorizing such a class. 28 U.S.C. § 1332(d)(1)(B). *See* State Court Action ¶¶ 25-26. While Plaintiff does not cite to it, Plaintiff presumably brings her claims under Rule 23 of the West Virginia Rules of Civil Procedure, which authorizes class actions. Plaintiff also repeatedly refers to the purported "Class" and "Class Members" she seeks to represent. *See, e.g.* State Court Action ¶¶ 25, 28-29.

8. The remaining requirements for CAFA jurisdiction are also met here.

**The Purported Class Consists Of More Than 100 Members**

9. Although Defendants do not believe Plaintiff has defined a proper class or that a class can be defined or maintained, Plaintiff's allegations indicate that the proposed class would include at least 100 members as required by 28 U.S.C. § 1332(d)(5)(B). Plaintiff has defined the purported class as "those persons who are citizens of the State of West Virginia as of the date of this action is filed and who have purchased or renewed memberships with AirMedCare Network" and alleges that there are "numerous such persons." State Court Action ¶¶ 25-26. Plaintiff makes no effort to quantify the potential scope of her proposed class, but Defendants' records indicate that between November 10, 2012 and November 10, 2016,[3] more than 5,000 AirMedCare Network Memberships were sold in West Virginia to individuals who still reside in West Virginia. *See* Declaration of Brandi Jordan, attached as Exhibit 3, at ¶ 3.

**CAFA's Diversity-of-Citizenship Requirement Is Met**

10. Under CAFA, the requisite diversity of citizenship is satisfied as long as there is "minimal diversity;" that is, when "*any* member of a class of plaintiffs is a citizen of a State different from *any* defendant." 28 U.S.C. § 1332(d)(2)(A) (emphasis added); *see also Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 702 (4th Cir. 2010) (holding that CAFA confers "subject matter jurisdiction on federal courts over class

---

[3] Although Plaintiff provided no time limit for her proposed class, Defendants assumed a class period of four years prior to the date she requested a summons in West Virginia state court because the statute of limitations for her claims under the West Virginia Consumer Credit and Collections Act is four years. West Virginia Code §46A-5-401(1). To the extent Plaintiff intends to seek a class definition beyond that four year period, the number of memberships sold will increase.

4

actions in which the amount in controversy exceeds $5 million and in which any member of a class of plaintiffs is a citizen of a State different from any defendant") (quotations omitted).

11. Plaintiff is a citizen of West Virginia who resides in Dingess, Mingo County, West Virginia. State Court Action ¶ 1.

12. As alleged by Plaintiff, Med-Trans is incorporated under the laws of North Dakota and its principal place of business is located in Lewisville, Texas. State Court Action ¶ 3. Med-Trans is therefore a citizen of North Dakota and Texas, not West Virginia. 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign where it has its principal place of business. . . .").

13. Plaintiff also alleges that AirMedCare is incorporated under the laws of Missouri and its principal place of business is located in West Plains, Missouri. State Court Action ¶ 2. Thus, if AirMedCare were a distinct legal entity with the capacity to be sued, AirMedCare would be a citizen of Missouri, not West Virginia.[4]

14. Thus, at least one member of the proposed class and one defendant are diverse and the minimal diversity requirement under CAFA is met. 28 U.S.C. § 1332(d)(2)(A).

---

[4] As noted previously, AirMedCare is actually a d/b/a Air Evac EMS, Inc. Although not named by Plaintiff in this lawsuit, Air Evac EMS, Inc. is incorporated under the laws of Missouri and its principal place of business is located in Missouri. Exhibit 3 at ¶ 1. It is therefore a citizen of Missouri, not West Virginia. 28 U.S.C. § 1332(c)(1).

**CAFA's Amount-In-Controversy Requirement Is Satisfied**

15. Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest or costs. 28 U.S.C. § 1332(d)(6). The class claims alleged by Plaintiff meet the jurisdictional threshold.

16. The amount in controversy is "not what damages the plaintiff will recover, but what amount is in controversy between the parties." *Kemper v. Quicken Loans, Inc.*, 2013 WL 5504152, at * 2 (N.D.W.V. Oct. 2, 2013) (quotations and citations omitted); *Martin v. State Farm Mut. Auto Ins. Co.*, 2010 WL 3259418, at *5 (S.D.W.V. Aug. 18, 2010) (same). Ordinarily, the "sum claimed by the plaintiff controls" the amount in controversy determination. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010). Further, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554.

17. Plaintiff's complaint seeks damages on behalf of "those persons who are citizens of the State of West Virginia as of the date of this action is filed and who have purchased or renewed memberships with AirMedCare Network." State Court Action ¶¶ 25. Although Plaintiff does not purport to quantify the total damages sought, she seeks a variety of monetary damages, including disgorgement of ill-gotten gains,

Hayseeds damages, compensatory damages, punitive damages, and statutory penalties, among other things. *Id.* at p. 10. On top of those damages, Plaintiff also seeks declaratory judgment, an injunction, and attorneys' fees. *Id.*

18. Plaintiff's demand for damages under the Consumer Credit and Collection Act on behalf of the purported class easily satisfies the $5,000,000 CAFA threshold. Plaintiff alleges that Defendants sold Plaintiff an "insurance" policy without being licensed to do so and thereby, according to Plaintiff, Defendants "collected a debt in violation of the Consumer Credit and Protection Act." State Court Action ¶¶ 24, 47. Thus, according to Plaintiff, Defendants allegedly violated the Consumer Credit and Protection Act each time they sold a membership agreement within the State of West Virginia. For purposes of removal, Defendants and the Court must assume that Plaintiff has alleged a viable cause of action under the Consumer Credit and Protection Act and that each member of the purported class would have the same claim against Defendants.[5]

19. The Consumer Credit and Protection Act authorizes a successful claimant to recover (1) actual damages; (2) $1,000 for each violation;[6] and (3) attorneys' fees. West Virginia Code §§ 46A-5-101(1), 46A-4-104. Because Plaintiff has alleged that each sale of a membership agreement in West Virginia is a violation, and because the

---

[5] There are many reasons why these assumptions are incorrect on the merits, including the fact that the membership agreements at issue are not "insurance" under West Virginia law. Nonetheless, for purposes of this Notice of Removal, Defendants have assumed that such a claim can be maintained against them.

[6] The statutory "aggregate amount of the penalty awarded" is generally capped at the "greater of $175,000 or the total alleged outstanding indebtedness." West Virginia Code § 46A-5-101(1). However, in a class action, the aggregate limits on the amount of the penalty must be "applied severally to each named plaintiff and each class member such that no named plaintiff nor any class member may recover in excess of the greater of $175,000 or the total alleged outstanding indebtedness." *Id.*

class definition put forth by Plaintiff includes at least 5,000 people, the minimum statutory penalty at issue in this case at least $5,000,000.[7]

20. Plaintiff also seeks to recover actual damages on the basis that "she paid for a service that is essentially worthless." State Court Action ¶ 23. Although Plaintiff makes no effort to quantify her actual damages, she does allege that she believes she paid $300 for her membership. *See id.* ¶¶ 24, 47. Presumably, Plaintiff's "actual damages" include the amount she paid for the "worthless" service. Thus, based on her allegations and the number of members in the purported class, at least another $1,500,000 in damages is at issue in this matter.[8]

21. Plaintiff also seeks attorneys' fees, which must be considered as part of the removal analysis and they further increase the amount in controversy. *Frederico v. Home Depot*, 507 F.3d 188, 199 (3rd Cir. 2007) (holding that attorneys' fees must be considered in determining jurisdictional threshold under CAFA); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998). Attorneys' fees are considered in calculating the amount in controversy when they are made specifically available by statute. *Galt G/S*, 142 F.3d at 1156. That requirement is met here. Plaintiff has requested an award of "reasonable attorney fees," along with "attorneys' fees" under the West Virginia Consumer Credit and Protection Act. State Court Action p. 10.

---

[7] Mulitplying 5,000 memberships sold by the $1,000 statutory penalty per violation equals $5,000,000. When adjusted for inflation, the $1,000 penalty per violation will be higher. *See* West Virginia Code § 46A-5-106.

[8] Multiplying 5,000 memberships by $300 per membership equals $1,500,000.

22. Attorneys' fees equal to 25% or more of total damages are frequently deemed reasonable for purposes of calculating the amount in controversy under CAFA. *See, e.g.*, *Frederico*, 507 F.3d at 199 (factoring in potential award of 30%); *Baylor v. Zipcar, Inc.*, No. 14-CV-02483, 2015 WL 4931756, at *9 (N.D. Cal. Aug. 18, 2015) (factoring in potential award of 25%).

23. The injunctive relief sought by Plaintiff must also be considered when determining whether the amount in controversy exceeds $5,000,000. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."). When calculating the amount-in-controversy, a court should ascertain the value of an injunction by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant. *Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1016 (4th Cir. 1981).

24. Here, Plaintiff seeks to enjoin "defendant's illegal conduct" and requests an order to disgorge "any of [Defendants'] ill-gotten gains." State Court Action p. 10. The potential cost of (1) being forced to shut down the sale of membership agreements in West Virginia and (2) not being allowed to collect the full fees incurred by Defendants for services they have rendered when third-party recoveries are available would easily exceed the $5,000,000 jurisdictional threshold.[9] *See* Exhibit 3 at ¶ 5.

---

[9] Indeed, as noted above, the $300 membership fee alleged by Plaintiff would generate more than $1,500,000 over the course of a four year period. A prospective injunction precluding Defendants from selling memberships in West Virginia would likely continue to impact Defendants at a similar rate in the future. In addition, if Defendants are enjoined from pursuing

9

25. Finally, to the extent there is any doubt whether the jurisdictional amount is met, CAFA's legislative history makes clear that such doubts should be resolved in favor of federal jurisdiction. *See, e.g.*, S. Rep. 109-14, at 43 (2005) ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."); *id.* at 35 (the intent of CAFA "is to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications[]"); *id.* at 27 ("The Committee believes that the federal courts are the appropriate forum to decide most interstate class actions because these cases usually involve large amounts of money and many plaintiffs, and have significant implications for interstate commerce and national policy.").

26. Because CAFA provides this Court with original jurisdiction of this matter, the case is properly removed.

## RESERVATION OF RIGHTS

27. Defendants deny the allegations contained in the State Court Action and file this Notice of Removal without waiving any defenses, objections, exceptions, or obligations that may exist in their favor in either state or federal court.

---

the collection of their full service fees when recoveries from third parties are available to pay them, the financial impact would be even more significant. Here, Plaintiff asserts that Defendants should not be able to recover more than $33,000 in service fees even if Plaintiff received such money from third parties and promised under the terms of her membership agreement to release money received from third parties to pay for those services. *See* State Court Action ¶¶ 10, 13, 15. If only 152 potential class members receive similar services from Defendants and obtain a recovery from third parties, such an injunction would also independently cost Defendants $5,000,000. ($5,000,000/$33,000 = 151.51).

28. Further, in making the allegations in this Notice of Removal, Defendants do not concede that the allegations in the State Court Action are accurate, that Plaintiff has asserted claims upon which relief can be granted, that all of the Defendants are subject to the jurisdiction of West Virginia federal or state courts, or that recovery of any of the amounts sought is authorized or appropriate. Nor do Defendants concede that Plaintiff's proposed class is properly defined or that class certification is appropriate. Defendants explicitly reserve their rights to challenge the putative class at an appropriate time.

29. Defendants also reserve their rights to amend or supplement this Notice of Removal. If any questions arise as to the propriety of removing this matter, Defendants request the opportunity to present a brief, oral argument, and any further evidence necessary in support of its position that the State Court Action is removable.

## CONCLUSION

30. Based on the foregoing, Defendants respectfully remove this action from the Circuit Court of Mingo County, West Virginia, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Respectfully submitted,

*/s/ Carte P. Goodwin*
Carte P. Goodwin (WV Bar No. 8039)
FROST BROWN TODD, LLC
500 Lee Street East, Suite 401
Charleston, West Virginia 25301-3207
(304) 348-2422
cgoodwin@fbtlaw.com

Joshua L. Fuchs (*pro hac vice motion forthcoming*)
Texas State Bar No. 24029559
Elizabeth G. Myers (*pro hac vice motion forthcoming*)
Texas State Bar No. 24047767
JONES DAY
717 Texas
Suite 3300
Houston, TX 77002-2712
Telephone: +1.832.239.3939
Facsimile: +1.832.293.3600
jlfuchs@jonesday.com
egmyers@jonesday.com

ATTORNEYS FOR DEFENDANTS

EN11801.Public-11801  4844-3156-9471v1