```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF WEST VIRGINIA
                            AT CHARLESTON
```

CONNIE R. HUNDLEY, individually
and on behalf of those similarly
situated,

        Plaintiff,

v.                          Civil Action No. 2:16-cv-12428

AIR EVAC EMS, INC., d/b/a
AirMedCare Network; and MED-TRANS
CORPORATION,

        Defendants.


### MEMORANDUM OPINION AND ORDER

Pending are defendants' motions to dismiss, filed December 29, 2016 and February 2, 2017.

        I.    Facts and Procedural Background

Connie R. Hundley is a resident of Mingo County, West Virginia. Upon solicitation by Matthew Ellis, Ms. Hundley paid $300 to buy a "membership" to the "AirMedCare Network," a trade name of defendant Air Evac EMS, Inc., (hereinafter "AirMedCare" or "AirMedCare Network"), a Missouri Corporation. Compl. ¶ 7. The AirMedCare Network is an association of air ambulance providers that sells memberships which "provide Network members with no out-of-pocket expenses for air ambulance services

provided by the following companies: defendant Air Evac EMS, Inc.; EagleMed LLC; REACH Air Medical Services, LLC, and defendant Med-Trans Corporation." Compl. ¶ 5. As stated in the Terms and Conditions of membership, a membership ensures "no out-of-pocket flight expenses if flown by the Company or another AirMedCare Network participating provider . . . by providing prepaid protection against [AirMedCare Network] Provider air ambulance costs that are not covered by a member's insurance or other benefits or third party responsibility[.]" ECF # 4, Exhibit 2 at 2. The terms and conditions clarify that in certain circumstances beyond the company's control, air ambulance services may be unavailable. Id. Defendant Med-Trans Corporation is one of the affiliated companies in the AirMedCare Network. AirMedCare and Med-Trans are separate legal entities; the latter is incorporated in North Dakota. Compl. ¶ 2.

On July 25, 2015, Ms. Hundley was involved in a motorcycle accident in Tennessee. Compl. ¶ 8. Due to her injuries, she was transported to the University of Tennessee Medical Center by an air ambulance operated by defendant Med-Trans. Id. at ¶ 9. She was an AirMedCare Network member at the time. Id. at ¶ 11. Following the incident, Hundley received from Med-Trans a demand for payment by her or third parties in

the amount of Thirty-Three Thousand Eight Hundred Ninety-Three Dollars and Twenty-Two Cents ($33,893.22), the full cost of the flight.  Id. at ¶ 13.  Hundley then brought this lawsuit, individually and on behalf of a class of "persons who are citizens of the State of West Virginia as of the date this action is filed and who have purchased or renewed memberships with AirMedCare Network," Compl. ¶ 25, claiming that her membership should have indemnified her for the full flight cost, and that AirMedCare was not authorized to collect the $300 she paid for her membership because AirMedCare was not a licensed insurer.

Hundley brought claims for breach of contract against AirMedCare and Med-Trans (Counts I and V), violation of West Virginia Unfair Trade Practices Act, W. Va. Code § 33-11-1, ("WVUTPA") against AirMedCare and Matthew Ellis[1] (Count II), common-law bad faith against AirMedCare (Count III), and illegal debt collection under the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code §46A-2-127, against AirMedCare (Count IV).  On December 22, 2016, AirMedCare removed

---

[1] All claims against Matthew Ellis have been dismissed.  ECF # 89.

the case to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453.

## II. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) correspondingly provides that a pleading may be dismissed when there is a "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss, a pleading must recite "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

"In resolving a motion pursuant to Rule 12(b)(6)[,] a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013)

(citing Fed. R. Civ. P. 12(d)).  "A court may, however, consider a 'written instrument' attached as an exhibit to a pleading, 'as well as [documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'"  Id. (alteration in original) (internal citation omitted) (quoting Fed. R. Civ. P. 10(c) and Phillips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

A district court's evaluation of a motion to dismiss is underlain by two principles.  First, the court "must accept as true all of the factual allegations contained in the [pleading]."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56).  Such factual allegations should be distinguished from "mere conclusory statements," which are not to be regarded as true.  Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  Second, the court must "draw[] all reasonable factual inferences . . . in the [nonmovant's] favor."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

## III. Discussion

AirMedCare seeks to dismiss each of Ms. Hundley's claims. First, AirMedCare argues that the AirMedCare Network membership program is not insurance under West Virginia law and any claim resting on that premise (Counts I-IV) must be dismissed. Second, AirMedCare contends that the non-contract claims (Counts II-IV) must be dismissed for being preempted by the Airline Deregulation Act of 1978. Finally, AirMedCare seeks dismissal of the breach of contract claims (Counts I and V) for failing as a matter of law.

As an initial matter, the court dismisses Count IV pursuant to its recent decision in Hinkle v. Matthews, 2:15-cv-13856, 337 F. Supp. 3d 674 (S.D.W.Va. 2018). See also Justice v. CNA Nat'l Warranty Corp., 2:17-cv-1997, 346 F. Supp. 3d 873 (S.D.W.Va. 2018). Count IV claims that AirMedCare engaged in illegal debt collection pursuant to the WVCCPA by collecting a $300 premium while not being a licensed insurer. In Hinkle, the court discussed a similar issue. There, the court determined whether the sale of so-called "GAP insurance," and the collection of a "premium" therefrom, constituted debt collection under the WVCCPA. The court held that it did not, because a "'claim' [under the WVCCPA] is fairly and most logically read as

a duty to pay money resulting from a prior contract. . . . [A] point of sale exchange is not a 'claim[.]'" Hinkle at 683. The analysis is the same here. The $300 sale was not a claim for debt collection purposes under the WVCCPA but was rather a point of sale exchange; Ms. Hundley paid $300 and received membership to the AirMedCare Network membership program. Accordingly, AirMedCare did not engage in debt collection regarding the $300 membership fee. Count IV is dismissed.

### A. Insurance Under the West Virginia Code

AirMedCare contends that Counts I-III must be dismissed because the membership agreement is not insurance. AirMedCare bases this contention on three arguments: first, that it does not undertake to indemnify its members; second, that the terms of the contract proclaim that it is not insurance; and third, that AirMedCare is not a third-party indemnifier.

The court finds the first two arguments to be without merit. As to the first, AirMedCare argues that the membership agreement is not insurance because it "does not guarantee service if a member is injured and requires air transportation services[,]" ECF #6 at 7, because factors "beyond its control[,]" ECF #4 Ex. 2 at 2, such as inclement weather may prevent them from offering service. It thus argues that it does

not incur any investment risk-taking pursuant to Sec. & Exch. Comm'n v. Variable Annuity Life Ins. Co. of Am., 359 U.S. 65, 71 (1959) (determining whether a company was in the business of insurance under the McCarran Ferguson Act: "we conclude that the concept of 'insurance' involves some investment risk-taking on the part of the company. . . . [I]n common understanding 'insurance' involves a guarantee that at least some fraction of the benefits will be payable in fixed amounts."). To the contrary, in the event an air ambulance is needed and available, and an AirMedCare affiliate is used, the AirMedCare Network guarantees that the member will be relieved of any debt owed to the affiliate transporter. This constitutes risk-taking on the part of AirMedCare.

As for the second argument, it is irrelevant that the membership agreement proclaims not to be insurance. The Supreme Court of Appeals of West Virginia has found a similar argument unconvincing in a case concerning a self-proclaimed "warranty contract." See Riffe v. Home Finders Assocs., Inc., 205 W. Va. 216 (1999). The court stated: "The agreement . . ., although it claims to offer 'warranty coverage' is an insurance policy. 'Policy means the contract effecting insurance, or the certificate thereof, <u>by whatever name called,</u> and includes all clauses, riders, endorsements and papers attached thereto and a

part thereof.'" Id. at 220, citing W. Va. Code § 33–1–16 (emphasis in original). So, too, may the network membership here be an insurance policy despite it claiming otherwise.

As for the third argument, West Virginia law defines insurance as "a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." W. Va. Code § 33-1-1. In State ex rel. Safe-Guard Prod. Int'l, LLC v. Thompson, 235 W. Va. 197 (2015), the Supreme Court of Appeals of West Virginia clarified this definition. The court considered whether "GAP insurance" -- a product purchased alongside a new vehicle that relieves the vehicle-purchaser of any amount remaining on the vehicle loan in the event the vehicle is totaled in an accident -- constituted insurance. Id. To make this determination, the court relied on an informational letter published by the West Virginia Insurance Commissioner in September 2009. Id. The relevant portion of the letter states:

> In order to fall outside OIC regulation, the cancellation or waiver of the debt must be directly provided by the lender. A contract in which a third party is obligated to indemnify the lender—as a result of a specified event that causes the lender to not be repaid by the borrower—is not a debt cancellation contract or debt suspension agreement. This type of contract is an insurance transaction and is subject to the insurance laws of the State of West Virginia. A third party includes, but is not limited to, a

>  subsidiary or affiliated company of the lender.

Id. at 200, quoting West Virginia Informational Letter No. 171, http://www.wvinsurance.gov/Portals/0/pdf/pol_leg/info_letters/in in_171.pdf. The court found this letter dispositive of the issue and held that GAP insurance was insurance because "Safe-Guard was not the lending institution." Id. at 203. "Safe-Guard merely provided a product that was designed to indemnify the lender in the event Ms. Hinkle's vehicle was a total loss and she still had a balance owed to the lender." Id. at 202. The court thus clarified that when a third-party agrees to indemnify a lender against a borrower, it is an insurance contract; when there are merely two parties, one agreeing to forgive the debt owed to it by the other, it is not.

The court finds that it holds insufficient factual knowledge to decide, at this juncture, whether the membership program constitutes insurance under the Safe-Guard analysis. AirMedCare insists that the membership agreement is not a third-party agreement because it "creates agreements between the member . . . and four affiliated air ambulance providers." ECF # 12 at 3. AirMedCare and Med-Trans are separate corporations, but the nature of their affiliation and the structure of the membership program is unclear. Although the language in Safe-

Guard explicitly indicates that affiliated companies are considered third-parties under the definition of insurance, Safe-Guard, 235 W. Va at 200 ("A third party includes, but is not limited to, a subsidiary or affiliated company of the lender"), it is unclear whether indemnification occurs in the membership program here. Specifically, it is unclear whether AirMedCare indemnifies AirMedCare Network member's debts owed to the individual transporters, or whether by virtue of being an AirMedCare Network member, Hundley was in a membership agreement with Med-Trans individually who thereby agreed to cancel the debt of members itself rather than receiving payment of the debt from AirMedCare. Until further findings of fact are conducted, the court cannot determine whether the AirMedCare Network membership constitutes insurance.

Accordingly, the court does not dismiss at this stage any claims on the ground that the membership program is not insurance.

### B. Preemption by the ADA and the MFA

Defendants next argue that Hundley's remaining non-contract claims (Counts II and III) should be dismissed for the independent reason of being preempted by the Airline

Deregulation Act of 1978. Hundley counters that the claims are reverse-preempted by the McCarran-Ferguson Act.

The Airline Deregulation Act contains an express preemption clause, stating: "Except as provided in this subsection, a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C.A. § 41713(b)(1).

The McCarran-Ferguson Act states: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance[.]" 15 U.S.C.A. § 1012.

For reasons appearing to the court, this issue also cannot be decided until it may be determined whether the AirMedCare Network membership constitutes insurance.

As for Count III, while common law claims may be covered by the Airline Deregulation Act, it does not protect air carriers from suits "alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 228 (1995). The

analysis differs in this regard based on whether AirMedCare is merely party to a contract or an insurer.

As for Count II, this claim hinges entirely on whether or not the membership program constitutes insurance. If it does not, the claim fails; if it does, the claim likely survives Airline Deregulation Act preemption because the McCarran-Ferguson Act protects from federal statutory challenges: "(1) any state law that 'relates to the regulation of the business of insurance' or (2) any state law 'enacted for the purpose of regulating the business of insurance.'" Life Partners, Inc. v. Morrison, 484 F.3d 284, 293 (4th Cir. 2007) (emphasis omitted).

Because the court has found that it cannot yet determine whether the AirMedCare Network membership is insurance, it defers consideration of the preemption issue.

### C. Breach of Contract Claims

Lastly, defendants seek to dismiss Counts I and V, plaintiff's breach of contract claims. AirMedCare seeks dismissal of these claims on a theory of prior breach, an affirmative defense. AirMedCare claims that under the terms of the contract, Hundley was required to remit her private insurance payments to Med-Trans before her debt would be relieved. Hundley on the other hand claims that AirMedCare

breached its contract with her by "failing to pay for air ambulance services provided to the plaintiff by Med-Trans Corporation[,]" Compl. ¶ 31, and that Med-Trans breached its contract with her by failing to acknowledge that the cost of her flight "was covered by plaintiff's membership agreement[.]" Compl. ¶ 52.

Potential defenses should not be analyzed in a Rule 12(b)(6) motion unless "the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996). In light of the allegations on the face of the complaint, as well as the statements in the accompanying documents that the membership frees members from out-of-pocket expenses for in-network air ambulances, the court cannot conclude, as a matter of law, that the claims for breach of contract are not viable. Counts I and V are not dismissed.

IV. Conclusion

Accordingly, for the foregoing reasons, it is ORDERED that the defendants' motions to dismiss are granted as to Count IV and otherwise denied, and that Count IV be, and it hereby is, dismissed.

The Clerk is directed to forward copies of this order to all counsel of record and any unrepresented parties.

ENTER: March 29, 2019

John T. Copenhaver, Jr.
Senior United States District Judge